IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

| | | |
|---|---|---|
| ALLIED WORLD INSURANCE COMPANY <br>     109 Water Street <br>     New York, NY 10038 <br><br>     *Plaintiff*, <br><br> v. <br><br> ICS NETT, INC. <br>     SERVE: Shehraze Shah <br>     1660 International Dr. <br>     Suite 200 <br>     McLean, VA 22102 <br><br> and <br><br> SHEHRAZE SHAH <br>     3851 Aristotle Court <br>     Unit 401 <br>     Fairfax, VA 22031 <br><br> and <br><br> SAADIA IQBAL <br>     44378 Hempland Dr. <br>     Ashburn, VA 20147 <br><br>     Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | Case No: _____ |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **COMPLAINT**

Plaintiff Allied World Insurance Company ("Allied" or "Plaintiff"), by its undersigned counsel, files this Complaint against and sues Defendants ICS Nett, Inc. ("ICS Nett"), Shehraze Shah ("Shah") (collectively, ICS Nett and Shah are referred to herein as the "Indemnitors"), and Defendant Saadia Iqbal ("Iqbal") (collectively, the "Defendants"), and states:

1

**Parties, Jurisdiction and Venue**

1. Allied is a corporation organized and existing under the laws of the State of New Hampshire, with its principal place of business in New York City, New York.

2. ICS Nett is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in McLean, Virginia.

3. Shah is a natural person who resides at 3851 Aristotle Court, Unit 401, Fairfax, Virginia 22031.

4. Iqbal is a natural person who resides at 44378 Hempland Dr., Ashburn, Virginia 20147.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Allied is a citizen of New Hampshire, and the Defendants are citizens of Virginia.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to this matter occurred within this judicial district.

**Background**

**A.    The Payment Bond Claim and Settlement**

7. ICS Nett entered into an open account agreement with City Electric Supply Company ("CES") pursuant to which ICS Nett agreed to various credit terms if CES extended credit to ICS Nett by supplying materials necessary to perform work on a project known as "WMATA Station Platform Rehabilitation Program" (the "Project").  A copy of this open account agreement is attached hereto as **Exhibit 1**.

8. Shah and Iqbal executed personal guaranties of this open account agreement. *See* **Exhibit 1**.

9. Allied issued a Subcontract Labor and Material Payment Bond at the request of ICS Nett, and in connection with the Project, numbered S001-7322 (the "Bond"). A true and accurate copies of the Bond is attached hereto as **Exhibit 2**.

10. In partial consideration for Allied agreeing to issue the Bond on behalf of ICS Nett, the Indemnitors executed an Agreement of Indemnity in favor of Allied on or about January 30, 2019 (the "Indemnity Agreement"). A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit 3**.

11. Pursuant to the terms of the Indemnity Agreement, ICS Nett and Shah agreed to indemnify, hold harmless, and reimburse Allied from and against any and all loss, cost, and expenses, including, but not limited to, interest and attorney's fees, incurred by Allied as a result of having issued bonds on behalf of ICS Nett, as principal.

12. Per the open account agreement, CES provided materials to ICS Nett with respect to the Project.

13. ICS Nett failed to pay CES for materials that CES provided to ICS Nett for the Project.

14. After ICS Nett failed to pay CES pursuant to the open account agreement, CES filed a claim against the Bond and filed a lawsuit against the Defendants and Allied, Case No. 1:20-cv-00047 in the United States District Court for the Eastern District of Virginia (Alexandria Division) (the "CES Litigation").

15. Ultimately, the CES Litigation was resolved pursuant to a Settlement Agreement and Mutual Release (the "Settlement Agreement"), dated November 24, 2021, in which the

Defendants and Allied agreed to pay CES the sum of $2,000,000.00 by February 22, 2022. The Settlement Agreement is attached hereto as **Exhibit 4**.

16. At all times, Allied looked to the Defendants to pay the entire $2,000,000.00 to CES.

17. ICS Nett contributed $1,500,000.00 of the total $2,000,000.00 to the settlement, but Defendants failed to pay the remaining $500,000.00 owed to CES.

18. Accordingly, on or about February 18, 2022, Allied paid CES the remaining $500,000.00 of the total $2,000,000.00 settlement amount, as set forth below.

19. In the Settlement Agreement, Allied reserved all of its rights under the Indemnity Agreement, including all claims for indemnity against the Indemnitors.

**B.    Allied's Demands to Indemnitors and Iqbal**

20. Allied made a number of demands to Defendants both prior to, and after, making the $500,000.00 payment to CES.

21. By letter dated January 14, 2022, Allied made demand on the Indemnitors for collateral of $500,000.00 and access to their financial books and records, in accordance with the Agreement of Indemnity. This January 14, 2022 letter is attached as **Exhibit 5**. The Indemnitors did not comply substantively with this letter.

22. By letter dated January 31, 2022, Allied made a second and final demand on the Indemnitors for the $500,000.00 in collateral and access to the books and records, along with attorney's fees and costs of $76,238.51, as of that date, in accordance with the Agreement of Indemnity. This letter further stated that the Indemnitors were primarily responsible for the debt to ICS Nett and that, if they did not timely pay the balance to ICS Nett, Allied would be forced to

pay the balance.  This January 31, 2022 letter is attached as **Exhibit 6**.  The Indemnitors did not comply substantively with this letter.

23. By letter dated February 15, 2022, Allied made a demand on Iqbal, placing her on notice that, if she did not timely pay the $500,000.00 shortfall to CES, that Allied would pay CES the $500,000.00 and would look to Iqbal for indemnification and reimbursement of its losses and expenses.  Allied's February 15, 2022 demand to Iqbal also informed Iqbal that she was primarily liable to CES, as a personal guarantor of the debt.  This February 15, 2022 is attached hereto as **Exhibit 7**.  Iqbal did not make payment of $500,000.00 to CES.

24. On or about February 18, 2022, Allied paid $2,000,000.00 to CES, of which only $1,500,000.00 was contributed by ICS Nett, Inc.  This left the Defendants liable to Allied for the difference of $500,000.00, which Allied paid to CES.

25. By letter dated March 3, 2022, Allied made an indemnity demand on the Indemnitors for $500,000.00, plus attorney's fees and costs, and $500,000.00 on Iqbal.  Allied also demanded access to the books and records of the Defendants.  A copy of this letter is attached hereto as **Exhibit 8**.  The Defendants did not comply with Allied's demands.

26. By letter dated March 14, 2022, Allied made a final demand on the Defendants for the same.  A copy of this letter is attached hereto as **Exhibit 9**.

27. Indemnitors have materially breached the Indemnity Agreement by failing to indemnify and repay Allied for its losses, costs and expenses, including attorney's fees, failing to provide collateral to Allied and failing to provide access to their books and records.

28. Iqbal and Shah failed and refused to reimburse Allied for the $500,000.00 payment Allied made for which Iqbal and Shah were personally obligated to pay to CES.

29. Allied brings the following counts against the named Defendants.

## COUNT I
## Breach of Contract – Contractual Indemnity
## (as to ICS Nett, Inc., and Shehraze Shah)

30. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

31. The Indemnity Agreement provides, among other things, that the Indemnitors shall indemnify and hold harmless Allied, as follows:

> Each Indemnitor hereby agrees and covenants with Surety as follows:
>
> * * *
>
> 3.2   INDEMNITY – at all times jointly and severally to exonerate, indemnify and keep indemnified, and to defend and to hold Surety harmless for any and all Loss, and in such connection, Indemnitors will pay Surety for all Losses specified or otherwise described in Surety's notice, no later than close of business on the Due Date with respect to such notice, whether or not Surety has actually made any payment thereon as of such Due Date.
>
> Principal's and Indemnitors' joint and several obligations to exonerate, indemnify, and keep indemnified, and to defend and hold harmless Surety from any and all liability for any and all Loss includes but is not limited to: liability, loss, costs damage and expense of whatsoever kind or nature (including but not limited to interest, court costs, attorney fees, investigation fees, consulting fees, accounting fees, and other professional or trade fees whether incurred on a flat fee, percentage, time and material, hourly or other basis, and include the cost of Surety's in-house professionals). Surety shall at all times has the right, but not the obligation, to retain counsel of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any collateral held by Surety, contract funds, trust funds or liens held by the Surety. The costs associated with Surety retaining such counsel shall be included within Indemnitors obligation to exonerate, indemnify, and hold Surety harmless.
>
> 3.3   DEPOSIT OF FUNDS – (a) to deposit with Surety upon demand as collateral, by the Due Date and after receipt of Surety's written demand an amount determined solely by Surety to exonerate Surety from Loss and to cover its exposure and/or liability for Loss covered by Section 3.2, as determined solely by Surety. At Surety's sole option, such collateral will be in addition to and not in lieu of any other collateral previously provided to Surety. In addition, if an Event of Default . . . has occurred, Surety will be entitled to demand that Indemnitors place with Surety funds equal to the aggregate penal sum of all then-outstanding Bonds, or such sum as

determined by Surety in its sole discretion (regardless of whether any actual liability for Loss exists under any of the Bonds).

32. Pursuant to its Bond and the Settlement Agreement, Allied was obligated to make payment to CES in the amount of $500,000.00 for the debt owed by ICS Nett to CES.

33. Per the Indemnity Agreement, the Indemnitors are obligated to indemnify Allied for this loss.

34. Allied has also incurred costs and expenses, including attorney's fees, for which the Indemnitors are obligated to indemnify Allied.

35. Allied anticipates that it will continue to incur additional attorney's fees and litigation costs and expenses, all of which are recoverable from the Indemnitors pursuant to the Indemnity Agreement.

36. Despite Allied's demands, the Indemnitors have failed to indemnify Allied in accordance with the Indemnity Agreement.

37. The Indemnitors have materially breached, and are in default of, the Indemnity Agreement.

WHEREFORE, Allied demands judgment against the Indemnitors, ICS Nett, Inc., and Shehraze Shah, jointly and severally, in the amount of $576,238.51, or such other amount as proven by Allied, plus interest, attorneys' fees expenses and costs, and such other and further relief as is just and equitable.

## COUNT II
### Breach of Indemnity Agreement – Specific Performance Access to Books and Records
### (as to ICS Nett, Inc., and Shehraze Shah)

38. The foregoing paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

39. The Indemnity Agreement obligates the Indemnitors to provide Allied with access to their financial books and records as follows:

> Each Indemnitor hereby agrees and covenants with Surety as follows:
>
> * * *
>
> 3.6   REPORTING/RIGHT TO INFORMATION – to maintain a system of accounting established and administered in accordance with United States generally accepted accounting principles ("GAAP") and until such time as the potential liability of Surety under any Bond or Bonds is terminated, the Indemnitors and its subsidiaries will promptly furnish to Surety such information as Surety may request from time to time, and Surety will have the right to examine and copy the books, records and accounts of Indemnitors, whether kept in hard copy or electronic format or any combination thereto.  Indemnitors also expressly authorize Surety to access its/his/her/their commercial and personal consumer credit records/profiles (including from TransUnion, Experian, and Equifax) at any time for any reasonable business purpose, including but not limited to, account numbers and account balances from any and all financial institutions, banks, depositories, accountants, creditors, or other persons or firms.

40. Despite demand, the Indemnitors have failed to provide Allied with full access to their financial books and records.

41. The Indemnitors have materially breached the Indemnity Agreement by failing to provide full access to their books and records.

WHEREFORE, Allied respectfully requests that this Court enter an order requiring the Indemnitors, ICS Nett, Inc., and Shehraze Shah, to perform their obligations under the Indemnity Agreement and provide Allied with full access to their books, records and accounts, and for such other and further relief as in favor of Allied which is just and equitable.

## COUNT III
**Unjust Enrichment**
**(as to Saadia Iqbal)**

42. Allied incorporates by reference, as if fully stated herein, the foregoing paragraphs of this Complaint.

43. Iqbal was personally obligated to CES for all debts owed by ICS Nett to CES, as she executed a personal guaranty to pay CES should ICS Nett fail to pay any debts owed.

44. Iqbal was primarily liable for all such debts.

45. At all times, Allied looked to Iqbal to satisfy the debt owed by ICS Nett to CES.

46. After ICS Nett failed to pay $500,000.00 of the $2,000,000.00 owed to CES, Iqbal failed to comply with their obligations to pay the debt owed.

47. Because Iqbal failed to comply with her personal guaranty, Allied became obligated to pay, and did pay, $500,000.00 to CES.

48. In making the $500,000.00 payment to CES, Allied conferred a benefit upon Iqbal.

49. Iqbal was aware of the benefit that Allied conferred upon her.

50. Under these circumstances it would be unjust and inequitable to allow Iqbal to retain this benefit without compensating Allied.

51. Iqbal has failed to reimburse Allied for the $500,000.00 payment Allied made to CES.

WHEREFORE, Allied demands judgment against Defendant Saadia Iqbal, in the amount of $500,000.00, plus interest, costs, and such other and further relief in favor of Allied.

Dated: March 30, 2022             ALLIED WORLD INSURANCE COMPANY
By Counsel

 */s/ Eric G. Korphage*
Eric G. Korphage, VSB # 91766
ekorphage@pikegilliss.com
Pike & Gilliss, LLC
600 Washington Avenue, Suite 303
Towson, Maryland 21204
(443) 761-6500
(443) 761-6519 (fax)

*Attorney for Allied World Insurance Company*